UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

CHRISTAL LEIST,                          §
                                         §
            *Plaintiff*,                 §
                                         §
v.                                       §        CIVIL ACTION No. G-06-753
                                         §
GHG CORPORATION,                         §
                                         §
            *Defendant*.                 §

MEMORANDUM OPINION AND ORDER

Now before the court is the motion for summary judgment of GHG Corporation.  Dkt. 22.

Upon considering the parties' arguments and the applicable law, the court is of the opinion that the

motion be GRANTED IN PART and DENIED IN PART.

BACKGROUND

GHG Corporation ("GHG") hired Christal Leist as a Shipping and Receiving Clerk on or

about July 27, 2004.  Dkt. 27.  GHG provides personnel to its clients, and Leist was hired to work

at the Depot Repair Facility ("DRF") of GHG's client International Business Machines ("IBM").

Dkt. 22.  GHG also hired Dustin Singleton as the supervisor of the GHG employees at DRF in July

2004.  Dkt. 22, 27.  Leist is Caucasian, and Singleton is African-American.  Dkt. 27.

In the spring of 2005, Singleton hired Kristin Scurry, her sister, as a Shipping and Receiving

Clerk.[1]  Dkt. 27.  Scurry is African-American.  Dkt. 27.  Leist alleges that Scurry frequently made

racist comments in the workplace, such as "these white people around here think they can work us

like slaves," and "white people born in a barn, don't know how to shut the barn door."  Dkt. 27.

Leist says that she told Singleton that the remarks had turned the workplace into a hostile and

---

[1]       There is some evidence that Scurry and Singleton are not actually sisters, but the record indicates that they were generally believed to be closely related.

contentious environment.  Dkt. 1.  Leist says that Singleton told her to ignore the comments.  Dkt. 27.  Several weeks after this, while Leist was speaking to Harold Horace, another African-American employee with whom she was friends, Scurry walked by and told Horace that "our kind shouldn't be talking to her kind."  Dkt. 1.  Horace and Leist expressed disapproval.  Dkt. 1.  Leist again went to Singleton, who told her to ignore the comments.  Dkt. 27.

Leist then heard Scurry make another racist comment to another African-American co-worker within Leist's hearing.  Dkt. 27.  On June 23, 2005, Leist told Jan Hammonds, an IBM employee in the Human Resources department, that Scurry had made racist statements.  Dkt. 1.  Leist told Hammonds that she had already spoken to Singleton but that nothing came of it.  Dkt. 1.  Darla Rember, another GHG employee, went with Leist to speak with Hammonds and confirmed to Hammonds that Scurry frequently made racist comments.[2]  Dkt. 27.  Hammonds then spoke with her supervisor, Tim Monaghan, who spoke with the general manager of GHG, John Denny.  Dkt. 27.  Denny told Hammonds that Leist had made up the allegations and was going to be fired.  Dkt. 27.  On June 24, 2005, Singleton held a staff meeting at which she said that harassment would not be tolerated.  Dkt. 1.  Another African-American employee at the meeting stated that "whoever went above Dustin's [Singleton's] head shouldn't have done that."  Dkt. 27.

On or about June 28, 2005, Singleton and her supervisor, Ruby Reynolds, who is also African-American, met with Leist and fired her for poor performance.  Dkt. 1.  Leist states that she had been written up for being tardy to work but had never received any other written or verbal complaints about her work.  Dkt. 27.  GHG alleges that Singleton had written up and reprimanded

---

[2]        The court has not relied on Rember's affidavit or deposition testimony in deciding this motion for summary judgment.  Because Rember's testimony merely reinforces that of Leist, it is irrelevant in the context of a motion for summary judgment because the court is not considering the credibility of the witnesses.

Leist on several occasions for "tardiness, attitude, excessive smoke breaks, and poor performance." Dkt. 22.  GHG alleges that it had already decided to fire Leist in June 2005, but that IBM's manager at DRF, Hugh Smikle, asked GHG to wait because he wanted to discuss the matter with another IBM supervisor at DRF.  Dkt. 22.  Leist alleges that other employees had as many or more write-ups for tardiness and were not fired.  Dkt. 27.  She also alleges that the write-ups that GHG describes were in fact written after she complained about Scurry's behavior, and that GHG deleted all the files on Singleton's computer in an effort to disguise this.  Dkt. 27.

Leist has made claims under 42 U.S.C. § 1981 for race discrimination, alleging a hostile work environment, wrongful discharge, and retaliation.  She has also made discrimination claims under 42 U.S.C. § 2000e ("Title VII").

## LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (986).  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  "'If the movant bears the burden of proof on an issue . . . [it] must establish beyond peradventure *all* of the essential elements' of the claim or defense."

*Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1994 (5th Cir. 1986)).  The court must view all evidence in the light most favorable to the non-movant.  *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).  If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 202 (1986).

LEGAL ANALYSIS

**1. Timeliness**

GHG alleges that Leist's Title VII claims are untimely.  A Title VII claim must be filed within 90 days of the plaintiff's receipt of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").  *Hall v. Continental Airlines, Inc.*, No. 07-20237, 2007 WL 3151885, at *2 (5th Cir. Oct. 26, 2007).  Unless the parties have alleged an exact date of receipt, courts assume that the plaintiff received the letter three to seven days after it was mailed.  *Id.* at *3.

Leist's right-to-sue letter was dated August 31, 2006. Dkt. 1, Ex. A.  However, it was postmarked September 1, 2006. Dkt. 1, Ex. A.  Leist filed suit on November 30, 2006, ninety days after the letter was postmarked.  Even assuming that she received it on the same day that it was mailed, her suit is timely.  Defendants' Motion for Summary Judgment is DENIED with respect to its timeliness argument.

**2. Wrongful Termination**

Title VII and § 1981 cases are considered under the same framework.  *See Hall*, 2007 WL 3151885 at *3.  Both statutes prevent race-based discrimination with respect to employment.  Title VII states:  "It shall be an unlawful employment practice for an employer . . . to discriminate against

4

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a).  Similarly, 42 U.S.C. § 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  The right to "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

A plaintiff must show the following four elements to make out a *prima facie* case of discrimination:  "he is a member of a protected class, he was qualified for the position that he held . . . he was fired or suffered other adverse employment action, and . . . similarly situated individuals outside of his protected class were treated more favorably."  *Hall*, 2007 WL 3151885 at \*3.  An alternative framing of the fourth element is that the plaintiff must show that the adverse employment action was motivated by unlawful discrimination. *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985).

Here, Defendant states that Leist has not alleged facts supporting the fourth element of a *prima facie* case, that non-white individuals were treated better or that she was otherwise discriminated against on the basis of race.  The court agrees.

Leist has not alleged any facts showing that she was treated differently by her supervisors because of her race.  In her deposition, she stated that she did not think that she was treated differently with respect to pay because of her race. Dkt. 22, Ex. A at 120.  She testified that Scurry was the only person who treated her differently because of her race, and Scurry was not her supervisor. Dkt. 27, Ex. A2 at 71.  She has not submitted evidence that her termination was due to her race, although, as discussed below, she has submitted evidence that she was terminated because

she complained about Scurry's racially-based comments.  In her deposition, she stated explicitly that she believes she was fired because she complained, not because she is Caucasian. Dkt. 22, Ex. A at 120.  Termination because of such complaints does not establish a Title VII or § 1981 wrongful termination case; that evidence supports a claim for retaliation.  *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174-75, 125 S. Ct. 1497 (2005) (noting that the anti-discrimination provision of Title IX included retaliation claims because, unlike Title VII, Title IX does not have a separate retaliation provision).  GHG's motion for summary judgment is therefore GRANTED as to Leist's wrongful termination claims.

**3.  Hostile Work Environment**

A plaintiff asserting a hostile work environment claim must show the following elements:

(1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take action.

*Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001); *see Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

Even assuming that Leist has pled facts supporting the other four elements, she has not alleged facts showing that the comments made by Scurry "affected a term, condition or privilege of employment." *Celestine*, 266 F.3d at 353.  This element requires a showing that the harassment was severe according to the plaintiff's perception, and that the plaintiff's perception is "objectively reasonable." *Frank*, 347 F.3d at 138.  Factors for consideration include the frequency of the harassment and whether it was "physically threatening or humiliating" or "unreasonably interfere[d]

with an employee's work performance." *Id.*  Conduct that is "merely offensive" does not meet the standard.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993).

The comments by Scurry are clearly offensive.  There is no indication, though, that these comments affected a term, condition, or privilege of Leist's employment.  For example, Leist and Scurry were not assigned to work in the same area at DRF.  Dkt. 27, Ex. A1 at 34.  Leist testified in her deposition that, although she tried to avoid Scurry, this did not affect her work performance.  Dkt. 27, Ex. A1 at 36.  Nothing in the record indicates that Leist had to change any of her work habits or that she was unable to socialize with other employees because of Scurry's behavior.  Leist has not even alleged that she had a perception that Scurry's behavior was severely disturbing to her.  Leist said of Scurry, "it wasn't a matter of I didn't like her.  I didn't understand her."  Dkt. 27, Ex. A1 at 37.  Leist described Scurry's behavior as "kind of rude."  Dkt. 27, Ex. A1 at 37.  Nothing in the record indicates that Leist was physically threatened or intimidated by Scurry, or that she felt humiliated by Scurry's comments.  Scurry's behavior did not rise to the level required to establish a hostile work environment.  GHG's motion for summary judgment is GRANTED as to Leist's hostile work environment claims.

**4.  Retaliation**

Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3.  A plaintiff bringing a retaliation claim must establish the three elements of a prima facie case:  "1) that he is engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action."  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *see also Jones v.*

*Robinson Prop. Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005).  If a plaintiff establishes these elements, the defendant must show a legitimate, non-discriminatory purpose for the adverse employment action.  *Id*.  Then, the plaintiff must offer evidence that this purpose was pretextual. *Id*.

Leist has sufficiently alleged a *prima facie* case.  Complaining about harassment based on race is a protected activity.  Although Scurry's comments and Singleton's reaction to them were not sufficiently severe to create a hostile work environment, they were offensive enough that a reasonable person could have believed that they constituted actionable harassment.  *Cf. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001) (finding that behavior was so obviously not sexual harassment that the employer's complaint could not constitute protected activity).  In addition, had Scurry's comments continued or intensified without any intervention from Singleton, the work environment could have become hostile.  Leist alleges that she complained about racially-based comments to Singleton (although Singleton disputes this), and the parties agree that she complained about these comments to Hammonds, who reported those complaints to GHG.  Dkt. 22, Ex. C at 29-20 & Ex. 4 at 3; Dkt. 27, Ex. A1 at 52.

GHG terminated Leist, and despite GHG's arguments to the contrary, termination is the classic adverse employment action.  "[T]he closeness in time between the protected activity and the adverse employment action" raises a "genuine issue of fact as to whether there was a causal connection.  *Robinson Prop. Group*, 427 F.3d at 995.  In *Robinson*, a 60-day period between the protected activity and the adverse employment action was considered sufficient to raise a fact issue; here, only a few days elapsed between Leist's complaint to Hammonds and her termination.  *Id*. Accordingly, Leist has provided evidence on all three elements of the *prima facie* case.

Because Leist has made out a *prima facie* case, GHG must "articulate a lawful reason, regardless of what its persuasiveness may or may not be," for the adverse employment action. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). GHG has offered non-discriminatory reasons for Leist's termination, namely her repeated tardiness and other deficiencies in her work allegedly documented several months before her termination by Singleton. Dkt. 22, Ex. D.

However, Leist has offered sufficient evidence that Defendant's reason for terminating her was pretextual. A plaintiff can meet this burden by offering direct evidence of retaliation or by offering evidence that the defendant's non-retaliatory reasons are false. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996). First, there is evidence that other employees were written up for numerous tardies and were not fired. Dkt. 22, Ex. C at 37-38. This raises the question of why Leist was fired when these employees were not. Second, Leist has alleged that Singleton wrote the other memos concerning Leist's alleged deficiencies *after* Leist complained about Scurry's comments. Leist has alleged that she never saw these memos and that she did not sign them as was the normal practice with disciplinary memos. She has also provided Defendant's discovery response concerning the hard drive from Singleton's computer, which states that the hard drive was taken by IBM and wiped clean. Leist alleges that this was done to cover up the fact that the memos were written later than Defendant alleges. Defendant did not respond to these allegations in its reply. Although the court does not, at this point, grant Leist the benefit of an adverse inference as to the contents of the hard drive, the court believes that there is a material question of fact as to whether Defendant may

have created these memos about Leist's performance after she complained about Scurry's remarks.

GHG's motion for summary judgment as to Leist's retaliation claim is therefore DENIED.

## 5.  Mental Anguish and Pain and Suffering

Leist originally claimed damages for mental anguish and for pain and suffering.  She admits that she has renounced those claims.  Dkt. 27.  Accordingly, summary judgment is GRANTED as to those claims.

### CONCLUSION

For the reasons stated above, GHG's motion for summary judgment is GRANTED as to Leist's wrongful termination and hostile work environment claims and DENIED as to Leist's retaliation claims.  GHG's motion for summary judgment is also GRANTED as to Leist's claim for damages for mental anguish and for pain and suffering.  Leist's wrongful termination and hostile work environment claims are DISMISSED WITH PREJUDICE.  All parties are to bear their own costs, expenses, and attorney's fees incurred herein to date.

It is so ORDERED.

Signed at Houston, Texas on January 18, 2008.

_____
Gray H. Miller
United States District Judge

10